UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

CHRISTOPHER KNIGHTON                )
                                    )
            Petitioner,             )
v.                                  )              3:07-cv-2
                                    )              *Phillips*
                                    )
DAVID MILLS, Warden,                )
                                    )
            Respondent.             )

## MEMORANDUM

This is a petition for the writ of habeas corpus, pursuant to 28 U.S.C. § 2254, filed by

petitioner Christopher Knighton ("petitioner").  The matter is before the court on the answer

to the petition filed by the Tennessee Attorney General on behalf of the respondent and

petitioner's response thereto.  For the following reasons, the petition for the writ of habeas

corpus will be **DENIED** and this action will be **DISMISSED WITH PREJUDICE**.

# I.    Standard of Review

A state prisoner is entitled to habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. Under Rule 8 of the Rules Governing Section 2254 Cases In The United States District Courts, the court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If no hearing is required, the district judge is to dispose of the case as justice dictates. If the record shows conclusively that petitioner is not entitled to relief under § 2254, there is no need for an evidentiary hearing and the petition should be denied. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

# II.    Factual Background

The respondent has provided the court with copies of the relevant documents as to petitioner's direct appeal and post-conviction proceedings. [Court File No. 11, Notice of Filing of Documents, Addenda 1-8; Court File No. 16, Notice of Filing of Documents, Addenda 9-13].[1] Petitioner was convicted by a jury in the Circuit Court for Blount County, Tennessee, of aggravated rape, aggravated burglary, and theft of property over $1000. He was sentenced to concurrent sentences of six years and five years, respectively, on the

---

[1]Addenda 1-8 were filed in connection with respondent's motion to dismiss the petition as untimely, which was denied. Addenda 9-13 were filed in connection with respondent's subsequent answer to the petition.

2

aggravated burglary and theft convictions, to be served consecutively to a sentence of 25 years on the aggravated rape conviction, for a total effective sentence of 31 years. The convictions were affirmed by the Tennessee Court of Criminal Appeals on direct appeal. *State v. Knighton*, No. E2000-00746-CCA-R3, 2001 WL 125952 (Tenn. Crim. App. Feb. 15, 2001) [Addendum 2].

On direct appeal, petitioner challenged, *inter alia*, the sufficiency of the evidence to convict him of aggravated rape. In a lengthy summary, the Tennessee Court of Criminal Appeals stated the evidence against petitioner as follows:

> The victim was 27 years old at the time of the crime. She was single and lived alone except that her boyfriend, Stacy Sudderth, sometimes stayed overnight. On the morning of April 6, 1998, she went to work at her regular job at Densco Manufacturing in Maryville, Tennessee.

> Seneca Teeter testified that the defendant and Andre Jackson made several telephone calls to her on April 6. The defendant told her they were at the victim's home. Evidence from the telephone company corroborated Ms. Teeter's testimony. According to the telephone company records, six telephone calls were made between the hours of 1:00 p.m. and 5:00 p.m. from the victim's home telephone number to Ms. Teeter.

> The presence of someone in the victim's home was corroborated by Patricia Norman, the victim's next door neighbor. She testified that between 2:00 and 2:30 in the afternoon, she saw someone peeking out of the victim's window.

> The victim returned home between 5:00 and 5:30 in the afternoon. She went into her bathroom and was confronted by two men. Both were dressed in black, were wearing black ski masks and had gloves on their hands. The defendant was the shorter of the two and had a handgun in his hand. Jackson had a knife in his hand.[1] The victim was forced into the bedroom where the defendant tied her hands with a telephone cord, and Jackson removed her clothes by cutting them. The defendant left the bedroom while Jackson remained and forcibly raped her. When Jackson was over her, he lifted his

mask, and the victim could see the bottom part of his face. The man was lighter than her.[2] He had gold in his mouth and facial hair. She also observed that he had on red tennis shoes.[3] Jackson inserted himself into her but stopped when she told him she was hurting. He did not ejaculate inside her. During the process, Jackson told the victim that the rape was not about her, but that it was because her boyfriend, Stacy Sudderth, owed them money.[4]

> [1]Through the testimony of a witness and through a stipulation, the State established that the defendant was 5'8", and Jackson was 6'2". The victim could not identify the defendant and Jackson. Their identity and involvement in these crimes was established by direct and circumstantial evidence from several witnesses.

> [2]The victim, Jackson, and the defendant are of the black race.

> [3]Another witness saw Jackson later in the day and gave the same description.

> [4]This testimony was corroborated in part by Stacy Sudderth who testified he had previously had words with the defendant.

As they were leaving, the two men took the victim's cell phone and her jewelry. They told her that if she did not have $10,000 by ten o'clock that night, they were going to kill her, her boyfriend, and her family. The men put the victim into a closet and left. After the two men left, the victim was able to telephone a friend, Syreeta Tate.

Ms. Tate and her three-year-old son came to the victim's house and found the victim naked with her hands tied behind her back. Ms. Tate untied the victim and left because she was concerned the two men were still near, and she did not want to endanger her son. After leaving, Ms. Tate located Stacy Sudderth and sent him to the victim's house.

After Ms. Tate left, the victim called her cousin, Offie Blake, who called the police. Several police officers came to the victim's house. One of the officers testified that the victim was hysterical, sobbing and gulping for air. She told him she had been attacked by two men wearing masks who were armed with a pistol and knife. She told him that she had been raped. The officer testified that the house had been ransacked, and the furniture looked like it had been damaged or destroyed. The testimony of the officer concerning the victim's condition and state of mind and the condition of her house was

4

corroborated by the testimony of other police officers and by the victim's boyfriend.

At about 5:30 p.m., Melissa Ann Carter, who lived near the victim, observed two men wearing ski masks run to the porch of the house next door. She observed them remove their ski masks and recognized them to be the defendant and Andre Jackson.

At about the same time, Jackson called his girlfriend, Stephanie Delapp, and asked her to come get them. According to the records of the telephone company, the call was made from the victim's cell phone. As Miss Delapp turned on to the street where Jackson and the defendant were standing, a group of young boys threw a rock at her car. Jackson and the defendant confronted the boys. Syreeta Tate testified to seeing the same confrontation after she left the victim's house. The defendant and Jackson were standing in the street near the victim's home, and the defendant had a gun in his pants.

The victim was carried to the emergency room at the Blount Memorial Hospital. The emergency room physician testified that the victim was distraught, upset, crying and angry. She had linear bruises on her wrists which were consistent with her history of being tied by a telephone cord. The examination revealed a clitoral tear which appeared to have occurred within the past two to four hours. The tear was consistent with forceful sex.[5]

> [5]A forensic serologist and DNA analyst at the Tennessee Bureau of Investigation testified she was unable to obtain a DNA profile because no semen had been emitted during the rape.

Maurice Asbury testified that on the morning of April 6, the defendant told him that he was going to f --- some girl. Later, Asbury and the defendant picked up Andre Jackson at his house. Late that night, the defendant called Asbury. The telephone records revealed that the call was made from the victim's cell phone.

During the late night of April 6 or the early morning of April 7, Andre Jackson was killed. His death was determined to be a homicide.

Diva Brown, Andre Jackson's mother, testified that a few days after her son was killed, she talked with the defendant. The defendant told her that Stacy Sudderth had sold Andre Jackson and him some bad drugs at a price of about $3000. He said they went to the victim's house to see if they could

5

confiscate something to make up for the money that had been taken from them. The defendant denied that they raped her but admitted they were in her house.

*Id*. at **1-3. The appellate court concluded the evidence was sufficient to support the conviction for aggravated rape, *id*. at *3, and that the other allegations of error lacked merit, *id*. at **4-7.

Petitioner then filed a petition for post-conviction relief, in which he asserted various claims of ineffective assistance of counsel. The petition was denied after an evidentiary hearing and the Tennessee Court of Criminal Appeals affirmed the denial of post-conviction relief. *Knighton v. State*, No. E2005-02534-CCA-R3-PC, 2006 WL 1864472 (Tenn. Crim. App. July 5, 2006) [Addendum 8], *perm. app. dismissed, id.* (Tenn. Oct. 2, 2006).

In support of his petition for the writ of habeas corpus, petitioner alleges the following ten (10) grounds for relief, as paraphrased by the court, which he claims violated his rights to due process and a fair trial:

1. The evidence was insufficient to support the conviction for aggravated rape.

2. The voir dire process was defective because it resulted in the unconstitutional voir dire of unsworn jurors.

3. The trial court erred in refusing to excuse two jurors for cause.

4. The prosecution intentionally and systematically excluded males from the jury.

5. The indictment was insufficient to charge petitioner with aggravated rape.

6. The trial court erred in allowing petitioner's prior convictions to be introduced for impeachment purposes.

7. Petitioner was denied effective assistance of counsel due to counsel's failure to advise him of the applicable law before rejecting a plea offer.

8.  Petitioner was denied effective assistance of counsel due to counsel's failure to object to the State's use of peremptory challenges to exclude males from the jury.

9.  Petitioner was denied effective assistance of counsel due to counsel's use of an ill-advised trial defense.

10. Petitioner was denied effective assistance of counsel due to counsel's failure to challenge petitioner's sentence on direct appeal.

The respondent contends that petitioner is not entitled to relief because the decisions of the state courts rest on reasonable determinations of the facts and reasonable applications of federal constitutional law, and that any claim not raised in the state courts has been procedurally defaulted.

III.  Procedural Default

The doctrine of procedural default is an extension of the exhaustion doctrine.  A state prisoner's petition for a writ of habeas corpus cannot be granted by a federal court unless the petitioner has exhausted his available state court remedies.  28 U.S.C. § 2254.  This rule has been interpreted by the Supreme Court as one of total exhaustion.  *Rose v. Lundy*, 455 U.S. 509 (1982).  Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court.  *Picard v. Connor*, 404 U.S. 270 (1971).  *See also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (Exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review.").

Moreover, the substance of the claim must have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

Petitioner cannot file another state petition for post-conviction relief. Tenn. Code Ann. § 40-30-102(c). Accordingly, he has no remedy available to him in the Tennessee state courts for challenging his conviction and is deemed to have exhausted his state remedies.

It is well established that a criminal defendant who fails to comply with state procedural rules which require the timely presentation of constitutional claims waives the right to federal habeas corpus review of those claims "absent a showing of cause for the non-compliance and some showing of actual prejudice resulting from the alleged constitutional violation." *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977). *Accord Engle v. Isaac*, 456 U.S. 107, 129 (1982) ("We reaffirm, therefore, that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.").

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).

8

IV.    <u>State Court Findings</u>

Pursuant to 28 U.S.C. § 2254(d), petitioner may not obtain federal habeas corpus relief with respect to a claim that was adjudicated on the merits in a state court proceeding unless the state court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law or (2) was not reasonably supported by the evidence presented to the state court.  In addition, findings of fact by a state court are presumed correct and petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).  Petitioner has failed to rebut, by clear and convincing evidence, the findings of the state courts and they will be presumed correct by this court.

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), clarified the distinction between a decision "contrary to," and an "unreasonable application of," clearly established Supreme Court law under § 2254(d)(1).  A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Id*. at 413.  A state court decision "involves an unreasonable application of clearly established Federal law" only where "the state court's application of clearly established federal law was objectively unreasonable."  *Id*. at 409.  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. In light of the foregoing, the court will consider petitioner's claims for relief.

V.  Discussion of Claims

*A. Sufficiency of the Evidence*

In a federal habeas corpus proceeding in which a state prisoner challenges the sufficiency of the evidence supporting his conviction, the petitioner "is entitled to a determination whether the record evidence could support a finding of guilt beyond a reasonable doubt." *Moore v. Duckworth*, 443 U.S. 713, 714 (1979). However, the petitioner is entitled to habeas relief only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). *See Brofford v. Marshall*, 751 F.2d 845, 856 (6th Cir. 1985).

When reviewing a jury's verdict under a sufficiency of the evidence standard, a court must consider all the evidence in a light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. at 319. Witness credibility is an issue to be left solely within the province of the jury, *Deel v. Jago*, 967 F.2d 1079, 1086 (6th Cir. 1992); *United States v. Schultz*, 855 F.2d 1217, 1221 (6th Cir. 1988), and substantial deference should be given to the trier of fact. *United States v. Ayotte*, 741 F.2d 865, 867 (6th Cir. 1984). "[T]he federal court sitting in habeas should not attempt to substitute its own opinion for that of the jury which convicted

10

the petitioner." *York v. Tate*, 858 F.2d 322, 329 (6th Cir. 1988). A conviction should be affirmed if *any* rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Bourjaily*, 781 F.2d 539, 544 (6th Cir. 1986), *aff'd*, 483 U.S. 171 (1987).

Petitioner claims the evidence was not sufficient to convict him of aggravated rape because there was no proof that he penetrated the victim, and at most, facilitated penetration by another. He also refers to the indictment against him, which charged him in count one with having by use of force sexually penetrated the victim while armed with a knife and in count two with having by use of force sexually penetrated the victim while aided and abetted by another.[2] [Addendum 9, Technical Record on Direct Appeal, p. 2, Indictment]. Petitioner raised this claim on direct appeal.

In considering petitioner's claim that the evidence was not sufficient to support his conviction for aggravated rape, the Tennessee Court of Criminal Appeals first observed:

> Since a verdict of guilty removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the jury. This Court will not disturb a verdict of guilty due to the sufficiency of the evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt.

*State v. Knighton*, 2001 WL 125952 at *3 (citations omitted).

The appellate court then rejected the claim.

---

[2]Petitioner also challenges the sufficiency of the indictment for aggravated rape, which claim is considered *infra* at 18-20.

We find that the evidence was sufficient to convict the defendant of the crime of aggravated rape. Although the victim was unable to identify the defendant, there was ample evidence upon which the jury could find the defendant guilty of this crime. The testimony of the victim that she was raped was uncontradicted and was corroborated by several witnesses including the emergency room physician. She also testified as to the manner in which the rape occurred and was able to offer descriptions to distinguish the two men. The presence of Andre Jackson and the defendant in the victim's home was established through the testimony of several witnesses and was corroborated by the telephone records, which established that the defendant and Jackson made several calls from the victim's home phone and cell phone. Also of significance was the testimony of Melissa Ann Carter, who observed the defendant and Andre Jackson removing ski masks late in the afternoon of April 6 near the victim's home, and the testimony of Seneca Teeter and Stephanie Delapp, who saw Jackson and the defendant near the victim's home immediately after the rape. We find that this evidence is clearly sufficient to establish that the defendant was present in the home of the victim on the afternoon of April 6, 1998, and that he assisted and aided Andre Jackson in raping the victim.

*Id.*

This court has reviewed the transcript of evidence at petitioner's trial [Addendum 10, Vol. 1-6, Transcript of Evidence, pp. 1-481] and finds the decision by the Tennessee Court of Criminal Appeals is supported in the record. There is no question that the victim was forcibly raped at knife point. There was ample evidence that petitioner was in the victim's home at the time of rape, and that he held a gun on her and tied her hands behind her back prior to Andre Jackson actually raping her.

Based upon the foregoing, the appellate court's decision was neither contrary to, nor did it involve an unreasonable application of, federal law. Accordingly, petitioner is not entitled to relief on his claim that the evidence was insufficient to support his conviction for aggravated rape.

Petitioner alleges that a defective voir dire resulted in unsworn jurors. As the Tennessee Court of Criminal Appeals explained,

> The record reflects that 24 jurors were initially brought into the courtroom and were sworn before voir dire. It later became necessary to call additional jurors, but the trial court apparently overlooked administering the oath to them. His failure to do so was not brought to his attention by either the State or the defendant, and this issue was not raised until the motion for a new trial. In ruling upon the motion, the trial court stated that all jurors had attended an orientation session before the trial. At that time, they were all sworn and instructed upon the importance of understanding questions asked during the voir dire and answering those questions truthfully. The defendant does not claim any prejudice as the result of failing to swear the additional jurors nor does he claim that any juror did not truthfully answer questions asked upon voir dire.

> This Court addressed the same issue in *State v. Lillard*, No. 03C01-9704-CC-00123 (Tenn.Crim.App., filed December 23, 1997, at Knoxville), and held that although Rule 24 of the Tennessee Rules of Criminal Procedure requires that prospective jurors be sworn to answer truthfully questions they will be asked during the selection process, the failure to do so was harmless error when the defendant made no allegations that the jury was not fair and impartial.

> Herein, there is no allegation or evidence that the jury was not fair and impartial or that the defendant was prejudiced by the failure of the trial court to swear all prospective jurors. We find this error to be harmless.

*Id.* at *4.

Petitioner raised this issue in the state courts solely as a violation of state law, specifically Rule 24 of the Tennessee Rules of Criminal Procedure. [Addendum 9, Technical

Record on Direct Appeal, p. 74, Motion for New Trial, ¶ 2; Addendum 1, Brief of the Appellant on Direct Appeal, pp. 7-9].

Because this was decided as a matter of state law, it "is not cognizable in a federal habeas corpus proceeding." *Spalla v. Foltz*, 788 F.2d 400, 405 (6th Cir. 1986). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("we reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions"); *Lewis v. Jeffers*, 497 U.S. 764, 779 (1990) ("federal habeas corpus relief does not lie for errors of state law"); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Sinistaj v. Burt*, 66 F.3d 804, 807 (6th Cir. 1995) ("Errors of state law alone cannot form the basis of relief under federal habeas corpus.").

To the extent petitioner now alleges his federal constitutional rights were violated in this regard, that claim was not presented to the state courts and thus has been procedurally defaulted. Petitioner is not entitled to relief on this claim.

### C. Trial Court's Refusal to Excuse Two Jurors for Cause

Petitioner alleges that the trial court erred in refusing to excuse two jurors for cause. As the Tennessee Court of Criminal Appeals explained,

> The third issue presented for review is the contention that the trial court erred in refusing to excuse two jurors for cause. One juror had had her house burglarized and was assaulted during the process (juror # 18). The other juror read about the case in the newspaper and worked at the same company as the victim (juror # 14). The defendant contends that he was required to use

14

peremptory challenges to remove these two jurors which caused him to exhaust his challenges.

There is nothing in the record to suggest that the burglary and assault upon juror # 18 caused her to have any bias in favor of the State or that it influenced her in any manner. Likewise, juror # 14 said that although he had read a news account of the crime, he remembered little about what he had read, and he had no opinion about the case. He also said that while he worked at the same company as the victim, he did not know her. There is no evidence which suggests that juror # 14 was influenced or biased by what he read in the newspaper or because he worked at the same plant as the victim.

It is well established that the trial court has wide discretion in determining the qualifications of a juror. The trial court's decision will not be overturned unless there is a clear showing of an abuse of discretion. There is no showing of abuse of discretion in the trial court's refusal to excuse these jurors for cause. This issue is without merit.

*State v. Knighton*, 2001 WL 125952 at *4 (internal citations omitted).

Petitioner also raised this issue in the state courts solely as a violation of state law, specifically Rule 24 of the Tennessee Rules of Criminal Procedure. [Addendum 9, Technical Record on Direct Appeal, p. 74, Motion for New Trial, ¶¶ 3 and 4; Addendum 1, Brief of the Appellant on Direct Appeal, pp. 10-12]. Thus, the claim is not cognizable in this proceeding as a matter of state law and, to the extent petitioner now alleges his federal constitutional rights were violated in this regard, the claim has been procedurally defaulted. Petitioner is not entitled to relief on this claim.

## D. Exclusion of Males from Jury

Petitioner alleges that the prosecution intentionally and systematically excluded males from the jury through the use of peremptory challenges, leaving a jury of all Caucasian

15

women to hear his case. The Tennessee Supreme Court considered this claim as a matter of federal constitutional law as well as state law, and found that the issue was waived.

In his fourth issue presented for review, the defendant alleges the State intentionally and systematically excluded males from the jury. The record reflects that the State exercised seven peremptory challenges and all of them were males. No males sat on the jury. The defendant made no objection to the State's peremptory challenges during the jury selection process and did not raise this issue until the motion for a new trial.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 69 (1986), the Supreme Court of the United States held that "the equal protection clause forbids the prosecutor to challenge potential jurors solely on account of their race". In *J.E.B. v. Alabama, ex rel. T. B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89, 128 L.Ed. 89 (1994), the Supreme Court held that peremptory strikes made solely on the basis of gender also violate the dictates of the equal protection clause. The Supreme Court of Tennessee has addressed this issue in holding that a defendant could not use peremptory strikes to remove all females from the jury venire. *State v. Turner*, 879 S.W.2d 819, 823 (Tenn.1994). The procedure for invoking the protection of *Batson* is well established and recently outlined in *State v. Spratt*, 31 S.W.3d 587 (Tenn.Crim.App.2000).

Here the defendant must establish a prima facie case that a juror is being challenged on the basis of gender. *See Spratt*, 31 S.W.3d at 596. Once the defendant has presented a prima facie case, the trial court shall require the State to give a gender-neutral reason for the challenge. *See id*. If a gender-neutral explanation is given, the court must then determine whether the defendant has established purposeful discrimination. *See id*. The court in *Spratt* outlined the trial court's duties as follows:

The trial judge must carefully articulate specific reasons for each finding on the record, i.e., whether a prima facie case has been established; whether a neutral explanation has been given; and whether the totality of the circumstances support a finding of purposeful discrimination. The trial court's factual findings are imperative in this context. On appeal, the trial court's findings are to be accorded great deference and not set aside unless clearly erroneous. Thus, specificity in the findings are crucial.

16

*Spratt*, 31 S.W.3d at 596 (quoting *Woodson v. Porter Brown Limestone Co., Inc.*, 916 S.W.2d 896, 906 (Tenn.1996)) (citations omitted).

In this case the defendant did not object to the State's peremptory challenges, and, consequently, did not establish a prima facie case that the jurors were being challenged on the basis of gender. As a result, no gender neutral explanations were offered by the State, and the trial court made no factual findings. The failure of the defendant to timely raise a *Batson* violation was addressed in *State v. Elmore*, No. 03C01-9711-CR-00514 (Tenn.Crim.App., filed September 8, 1998, at Knoxville). In *Elmore*, the Court noted that the remedy for the discriminatory exercise of a peremptory challenge is for the Court to disallow the exclusion of the challenged juror. The Court held that the defendant was not entitled to appellate relief when the defendant failed to raise his objections in time to allow the Court to cure an alleged discrimination.

Based upon the cases cited herein, we hold that the defendant failed to timely raise the issue of a *Batson* violation and waived that issue.

*State v. Knighton*, 2001 WL 125952 at *5.

The finding by the Tennessee Court of Criminal Appeals that petitioner did not object to the prosecutor's use of peremptory challenges is supported in the record. In post-conviction proceedings, counsel for petitioner admitted that he did not object to the exclusion of males from the jury.[3] Likewise, the appellate court's conclusion that petitioner waived his *Batson* claim was neither contrary to, nor did involve an unreasonable application of, federal law. *See Hernandez v. New York*, 500 U.S. 352, 358 (1991) (In order to raise a *Batson* claim, a defendant first "must make a prima facie showing that the prosecutor has exercised peremptory challenges" on an improper basis). Accordingly, petitioner is not entitled to relief on this claim.

_____

[3]This admission is considered with respect to petitioner's claim of ineffective assistance of counsel, *infra* at 27-28.

*E. Insufficient Indictment*

Petitioner alleges that the indictment was legally insufficient to charge him with aggravated rape, because it did not reasonably inform him of the charge against him. As noted earlier, the indictment charged petitioner in count one with having by use of force sexually penetrated the victim while armed with a knife and in count two with having by use of force sexually penetrated the victim while aided and abetted by another. [Addendum 9, Technical Record on Direct Appeal, p. 2, Indictment]. The Tennessee Court of Criminal Appeals considered and rejected this claim.

> In his fifth issue presented for review, the defendant insists the indictment charging him with aggravated rape was legally insufficient.
>
> The defendant was indicted for aggravated rape in alternative counts. In Count One, the indictment alleged the defendant forcefully raped the victim while armed with a knife. In Count Two, the indictment alleged that the defendant forcefully raped the victim while aided and abetted by another person. The defendant argues that it was Andre Jackson who had the knife and who actually raped the victim and, consequently, the indictment did not provide sufficient notice to him of the charges being made. On the other hand, the State argues that it was entitled to rely upon the criminal responsibility statute and that the indictment was sufficient.
>
> In *State v. Hammonds*, 30 S.W.3d 294 (Tenn.2000), our Supreme Court summarized the constitutional notice requirements of an indictment. The indictment must contain allegations that (1) enable the accused to know the acquisition to which answer is required; (2) furnish the trial court an adequate basis for entry of a proper judgment; and (3) protect the accused from a subsequent prosecution for the same offense. *Hammonds*, 30 S.W.3d at 299. In *State v. Lemacks*, 996 S.W.2d 166 (Tenn.1999), the Court held that an indictment that alleges all of the elements of an offense will not be held insufficient if it fails to allege the specific theory by which the State intends to prove each element. In *Lemacks*, the defendant was indicted for DUI and the

18

jury was instructed that Lemacks could be found guilty of DUI by finding that he was driving the vehicle while under the influence of an intoxicant or if he was criminally responsible for allowing another party to drive the automobile while under the influence of an intoxicant. *Lemacks*, 986 S.W.2d at 170-71. The Court noted that criminal responsibility is not a separate, distinct crime but is a theory by which the State may prove the defendant's guilt of the alleged offense. The *Lemacks* Court continued that criminal responsibility is a codification of the common law theory of aiding and abetting and that any person who aids or abets in the commission of a criminal offense is guilty in the same degree as the principal who committed the crime. *Id.* at 170-71. Furthermore, it is not necessary that the indictment charge the defendant with criminal responsibility. *State v. Johnson*, 910 S.W.2d 897, 900 (Tenn.Crim.App.1995).

We recognize that the indictment was factually in error by alleging that the defendant, rather than Jackson, committed the rape. However, the evidence established that the defendant participated in the rape by aiding and abetting Jackson. The State was entitled to rely upon the theory of criminal responsibility. Accordingly, this issue is without merit.

*State v. Knighton*, 2001 WL 125952 at *6.

Petitioner also raised this issue in the state courts as a matter of state law, [Addendum 9, Technical Record on Direct Appeal, p. 74, Motion for New Trial, ¶¶ 8 and 9; Addendum 1, Brief of the Appellant on Direct Appeal, pp. 16-19], and the ruling of the Tennessee Court of Criminal Appeals was based solely upon state law. The claim is thus not cognizable in this proceeding.

The court notes that, in his brief on direct appeal, the petitioner made a passing mention of the U.S. Constitution, without reference to a specific section of the Constitution and without citation to authority. Such a passing mention is not sufficient to exhaust the claim for federal habeas corpus purposes. *See Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (in order to exhaust a claim, the substance of the claim must have been presented to

19

the state courts as a federal constitutional claim). Petitioner is not entitled to relief on this

claim.

## F. Use of Prior Convictions for Impeachment

Again, petitioner raised this issue in the state courts solely as a violation of state law,

specifically Rule 609 of the Tennessee Rules of Evidence, [Addendum 1, Brief of the

Appellant on Direct Appeal, pp. 20-21], and the ruling of the Tennessee Court of Criminal

Appeals was based solely upon state law.

> In the final issue, the defendant asserts that the trial court erred in ruling that the defendant's previous convictions for distributing drugs was admissible for impeachment purposes.

> The record reflects that the defendant has two prior felony convictions for delivering a controlled substance. The trial court found that if the defendant testified, the convictions were admissible for impeachment purposes under Tennessee Rules of Evidence 609. The trial court rationalized that there was no relation between drug charges and the crimes for which the defendant was on trial, the crimes were recent, and that there were several State witnesses who had similar convictions.

> The defendant argues that the prior drug convictions were not relevant to the issue of credibility and that the unfair prejudicial effect outweighed the probative value of the impeaching convictions because of evidence that the motive for these crimes was a prior drug deal between the victim's boyfriend, the defendant and Andre Jackson.

> In *State v. Mixon*, 983 S.W.2d 661 (Tenn.1999), our Supreme Court addressed the criteria to be considered in a Rule 609 hearing as follows:

>> In determining whether the issue of credibility outweighs its unfair prejudicial effect upon the substantive issues, two criteria are especially relevant. A trial court should first analyze the relevance the impeaching conviction has to the issue of

20

credibility.... If the conviction is probative of the defendant's credibility, the trial court should secondly "assess the similarity between the crime on trial and the crime underlying the impeaching conviction."

*Mixon*, 983 S.W.2d at 674.

In Tennessee, the law as to whether offenses based upon sale or delivery of drugs is relevant to the issue of credibility is about as certain as an election in Florida. Recently, this Court held that the sale of cocaine does not involve dishonesty or false statement as contemplated by Rule 609. *State v. Walker*, 29 S.W.3d 885, 891 (Tenn.Crim.App.1999). However, this Court held to the contrary in *State v. Brian Roberson*, No. 01C01-9801-CC-0043, (Tenn.Crim.App., filed Dec. 21, 1998) and in *State v. Gibson*, 701 S.W.2d 627, 629 (Tenn.Crim.App.1985). In *State v. Dooley*, 29 S.W.3d 542, 554, (Tenn.Crim.App.2000), this Court recognized that the admission of a prior felony drug conviction is probative to the issue of an accused's credibility and held that the trial court did not abuse its discretion in finding that a prior drug conviction was relevant to the issue of credibility in a second degree murder case. Further, in *State v. Toon*, 872 S.W.2d 922, 927 (Tenn.Crim.App.1993), this Court held that it was within the trial court's discretion to find that felony drug convictions were relevant to the defendant's credibility.

The illegal sale of drugs is an extremely profitable criminal enterprise, and its very nature involves a sustained intent to violate the law and the use of deceptive practices. These crimes are normally not detected in the absence of a police undercover operation. People who deal in drugs frequently suffer an addiction to drugs and commit other crimes to obtain money to buy drugs. These circumstances all involve elements of dishonesty. We find that the better reasoned view is expressed in those cases which hold that felony drug convictions are relevant to the issue of credibility.

Having concluded that these convictions are relevant, it is next necessary to determine whether the prejudicial effect outweighs the probative value of the evidence. The trial court found that the crimes for which the defendant was on trial were dissimilar to his prior convictions and that the prejudicial effect would be diminished because some of the State witnesses had prior convictions. We cannot say that the trial court erred in finding the probative value of the evidence outweighed its prejudice effect.

*State v. Knighton*, 2001 WL 125952 at **6-7.

Accordingly, the claim is not cognizable in this proceeding and, to the extent petitioner now alleges his federal constitutional rights were violated in this regard, the claim has been procedurally defaulted. Petitioner is not entitled to relief on this claim.

### G. Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984) the Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), petitioner must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*,

350 U.S. 91, 101 (1955)). A finding of serious attorney incompetence will not justify setting aside a conviction, however, absent prejudice to the defendant so as to render the conviction unreliable. *Id.* at 691-92.

Petitioner alleges four instances of ineffective assistance of counsel: (1) counsel failed to advise him of the applicable law before rejecting a plea offer; (2) counsel failed to object to the State's use of peremptory challenges to exclude males from the jury; (3) counsel used an ill-advised trial defense; and (4) counsel failed to challenge petitioner's sentence on direct appeal. These claims were considered and rejected by the Tennessee Court of Criminal Appeals in post-conviction proceedings.

The court notes that in doing so, the Tennessee Court of Criminal Appeals observed that *Strickland v. Washington*'s two-prong test is the standard for considering ineffective assistance claims. *Knighton v. State*, 2006 WL 1864472 at *4. In considering petitioner's claims of ineffective assistance of counsel, the appellate court first summarized the testimony adduced during the post-conviction evidentiary hearing.

> At the evidentiary hearing, the petitioner testified that he was eighteen years old when the offenses occurred and nineteen years old by the time of his trial. He said he had very little communication with his counsel before the trial, counsel having met with him on only one occasion, two days before the trial, for approximately thirty minutes. He testified he called counsel's office fifteen to twenty times but was only able to speak with his counsel's secretary. The petitioner said his grandfather went to his counsel's office, but he did not think his grandfather had ever been able to talk to his counsel. He also testified that he did not talk to his counsel during the appeal process and that they never discussed whether sentencing issues would be raised on appeal.
>
> The petitioner testified that his attorney told him he was facing a rape charge for which he might be convicted but that his attorney did not explain

23

to him that he could be convicted based on evidence that Jackson, not he, physically penetrated the victim. The petitioner said he rejected a plea offer from the state for a ten-year sentence to the aggravated rape charge but claimed if he had understood that he could be found criminally responsible for the crime, he would have accepted the offer.

The petitioner testified that he was tried before an all-female jury. He said the state exercised peremptory challenges excusing all the men from the panel. The petitioner testified that trial counsel told him that the state's strategy of seeking an all-female jury in a rape case would probably backfire and that counsel wrote the issue on a legal pad and said that this was a basis for appeal.

Relative to trial counsel's selection of defense strategy, the petitioner claimed that he and his attorney never discussed the relative strength of the state's case regarding identification of him as one of the perpetrators. He said his attorney also never advised him of the relative strength of the state's case regarding his culpability for the crimes that occurred.

The attorney who represented the petitioner at the trial and on direct appeal testified that he met with the petitioner at the jail several times to discuss the petitioner's case. Counsel told the petitioner he could be convicted of aggravated rape even though he did not commit the physical act of rape, although counsel was unsure whether they specifically discussed the theories of criminal responsibility and facilitation in legal terms. Counsel said that he conveyed the plea offer to the petitioner but that before they were able to discuss the offer fully and reach a decision, the state withdrew the offer because it had made a mistake in extending it.

The attorney testified he did not object to the state's use of peremptory challenges to exclude men from the jury because he felt that a panel of women might not be fond of the victim because of her lifestyle. He did raise the jury composition issue on direct appeal.

Relative to trial strategy, the attorney testified that he was somewhat limited by the petitioner's insistence that he had not been present at the crime scene and had no involvement in the crimes. The attorney said he was disinclined to pursue an inconsistent defense strategy which advanced that the petitioner was not present, but even if he were present, his culpability was limited. The attorney said he was concerned with presenting a defense which conceded the petitioner's presence but focused on minimizing his culpability

because if the petitioner were to testify, the minimal culpability defense would be at odds with the petitioner's testimony that he was not involved at all.

The attorney said he did not recall his thought process in deciding whether to raise an issue in the direct appeal relative to consecutive sentencing. He did not recall whether he had raised the issue, and he conceded he probably had not because it was not addressed in the appellate opinion.

The petitioner offered the testimony of Maurice Asbury in support of his post-conviction claim. Asbury had testified at trial for the state that the petitioner had come to his home in the early morning of the day the crimes took place. According to Asbury's trial testimony, the petitioner had said that "he was going to f-some girl." At the post-conviction hearing, Asbury testified he had given a statement to the police before the petitioner's trial, but he could not recall whether he had spoken with defense counsel. He testified that the petitioner's attorney had never asked him on cross-examination if the petitioner had said anything about this statement being in reference to the victim, as opposed to someone with whom the petitioner planned to have consensual relations. Asbury said he took the petitioner's statement to mean the latter and would have said so had he been asked.

*Id.* at **1-3.

This court has reviewed the transcript of evidence at petitioner's post-conviction hearing. [Addendum 12, Vol. 1-2, Transcript of Post-Conviction Evidentiary Hearing, pp. 1-74]. The summary of testimony is supported in the record.

The appellate court also summarized the trial court's findings of fact and conclusions of law.

The trial court entered a written order detailing its findings of fact and conclusions of law. It accredited counsel's testimony that the state withdrew the plea offer before the petitioner could accept or reject it, and, thus, it was not necessary to determine whether the petitioner ultimately would have accepted the agreement. The court dismissed the petitioner's complaint relative to the all-female jury, finding that the petitioner and his attorney had discussed the issue and that counsel thought that the all-female jury might actually benefit the defense. The trial court found that counsel had been deficient in

25

failing to raise a consecutive sentencing issue on direct appeal. The court found, however, that in view of petitioner's prior record, the petitioner had not carried his burden of proving that the appellate court would have granted relief. It also found that the petitioner had not carried his burden regarding mitigating proof that should have been presented at the sentencing hearing. The court found that although a minimal culpability defense would have been more plausible than the identity defense offered, trial counsel was not able to present a defense that was contrary to what the petitioner represented the facts to be. The court accredited counsel's testimony that the petitioner told counsel he was not present at the crime scene, and the court noted that the presentence report that was an exhibit at the post-conviction hearing reflected that the petitioner told the officer who prepared the report, "I was not involved at all." After disposing of all the petitioner's factual contentions, the trial court held that the petitioner had failed to carry his burden of proof and denied relief.

*Id*. at *3.

This summary is also supported in the record. [Addendum 6, Technical Record in Post-Conviction Proceedings, pp. 64-67, Order dismissing Post-Conviction Petition].

Petitioner first alleges that counsel did not properly advise him of the applicable law before he rejected the plea offer. According to petitioner, he was not aware he could be convicted of rape based upon criminal responsibility. The Tennessee Court of Criminal Appeals found this allegation lacked merit.

The petitioner's first appellate claim of ineffective assistance of counsel is that his attorney did not adequately advise him of the applicable law of criminal responsibility before he rejected a plea offer. As his attorney testified and the trial court found, the state withdrew the plea offer before the petitioner had time to act on it. The evidence does not preponderate against this finding. Given this finding that there was no plea agreement for the petitioner to accept, he cannot demonstrate prejudice from any alleged deficiencies of counsel in advising him with regard to the plea agreement.

*Knighton v. State*, 2006 WL 1864472 at *4 (internal citations omitted).

26

This court agrees. Since the State had withdrawn the offer of ten years prior to acceptance, whether petitioner would have accepted it under applicable law is immaterial.

Petitioner next alleges that counsel failed to object to the State's use of peremptory challenges to exclude males from the jury. Trial counsel testified at the post-conviction hearing that, as part of trial strategy, he thought that a female jury might be more "moralistic" against the victim given the fact that her long-time boyfriend, who would be testifying, was a convicted drug dealer. [Addendum 12, Post-Conviction Evidentiary Hearing, Vol. 2, p. 8]. For that reason, the Tennessee Court of Criminal Appeals found the issue lacked merit.

> Second, the petitioner argues that his attorney was ineffective because he failed to object to the state's exercise of peremptory challenges to strike men from the jury venire. The lower court accredited the testimony of the petitioner's attorney about his tactical decision not to object to the state's apparent strategy of excluding men from the jury because counsel believed the state's strategy might backfire. The evidence before us does not preponderate against that finding relative to counsel's strategic choice.

*Knighton v. State*, 2006 WL 1864472 at *5 (citation omitted). This court agrees and will not second-guess counsel's trial strategy. *See Hughes v. United States*, 258 F.3d 453 (6th Cir. 2001).

> Counsel is also accorded particular deference when conducting voir dire. An attorney's actions during voir dire are considered to be matters of trial strategy. A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness.

*Id*. at 457.

As his third claim, petitioner challenges counsel's choice of trial strategy. The trial court considered and rejected this claim as follows:

Knighton complained that his trial counsel was ineffective in that the defense put forth to the jury was that the petitioner did not participate in the events at the home of [the victim], and therefore was not guilty. The petitioner's testimony has changed. He now admits that he was with Andre' Jackson and was involved in a burglary of [the victim's] home. Knighton also admits that Deva Brown's (Andre' Jackson's mother) testimony at trial as to what Mr. Knighton told her about his and her son's reasons for being at [the victim's] home was true. Mr. Knighton's testimony in his post conviction hearing is of course opposite from the position taken at trial and sentencing. Note Exhibit "2", the pre-sentence report, wherein he told the pre-sentence officer that "I was not involved at all". Post conviction counsel argues that a more effective defense would have been to dispute the culpability of Knighton in the rape and to admit his presence in [the victim's] home and explain exactly why he and Mr. Jackson were there. Of course that would have been a much more plausible defense, however, trial counsel cannot put forth a defense that is contrary to what his client is telling him. This is confirmed by [counsel's] testimony that his client repeatedly told him that he was not at [the victim's] home, and in fact, [the victim] could not identify either of her assailants. This issue is without merit as well.

[Addendum 6, Technical Record in Post-Conviction Proceedings, pp. 66-67, Order dismissing Post-Conviction Petition]. The Tennessee Court of Criminal Appeals agreed with the trial court.

The petitioner contends that his attorney should have defended the charges by minimizing the petitioner's involvement in them, rather than focusing on weaknesses in the state's evidence identifying the petitioner as a perpetrator. The evidence does not preponderate against the trial court's finding that counsel strategically chose the identity defense because the petitioner denied any involvement in the crimes and a minimal culpability defense would have been inconsistent with that denial. The record demonstrates that the petitioner maintained complete innocence, even after the jury's verdict finding him guilty of the offenses. The petitioner's attorney cannot be faulted for choosing a strategy that was consistent with his client's insistence he was not present at the crime scene.

28

*Knighton v. State*, 2006 WL 1864472 at *5 (citation omitted). This court agrees with the findings and conclusions of the state courts. Counsel's trial strategy was necessitated by petitioner's version of events.

For his last claim of ineffective assistance of counsel, petitioner alleges that counsel failed to challenge on appeal the fact that petitioner received not only the maximum sentence for aggravated rape, but also that the sentence was ordered consecutive. The trial court determined that the issue of sentencing should have been raised on direct appeal, but did not believe petitioner would have received any relief based upon his criminal record. [Addendum 6, Technical Record in Post-Conviction Proceedings, p. 67, Order dismissing Post-Conviction Petition].

The Tennessee Court of Criminal Appeals concurred with the trial court's conclusion.

> Finally the petitioner claims that his attorney was ineffective because he failed to raise sentencing issues on direct appeal. The trial court found that counsel's performance was deficient in this respect but that the petitioner had not demonstrated how he was prejudiced. In his brief, the petitioner makes conclusory statements that the maximum sentence imposed for aggravated rape should have been appealed because he did not physically penetrate the victim and was not in the room when Jackson did so. He argues his aggravated burglary conviction was worthy of mitigation because he only went to the victim's home attempting to recover property he believed was his. He asserts, without citing to the record, "[t]he mitigating evidence is in the trial record." The petitioner's brief does not address the issue of consecutive sentencing. The petitioner has cited no authority to this court supporting his position that he was entitled to sentencing relief, had the appropriate issues been raised in the trial court and on direct appeal. We hold that the petitioner has failed to show he was prejudiced by his attorney's failure to attack the consecutive nature of his sentences.

*Knighton v. State*, 2006 WL 1864472 at *5.

This court agrees that petitioner has failed to demonstrate ineffective assistance of counsel with respect to the sentencing issues. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland v. Washington*, 466 U.S. at 691.

As the Sixth Circuit has observed, "our role on habeas review is not to nitpick gratuitously counsel's performance. After all, the constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation." *Smith v. Mitchell*, 348 F.3d 177, 206 (6th Cir. 2003). Under the circumstances, petitioner received "constitutionally adequate representation." *Pillette v. Berghuis*, 408 F. App'x 873, 891 (6th Cir. 2010).

Based upon the foregoing, this court concludes that the state courts' determinations that petitioner received the effective assistance of counsel were neither contrary to, nor did they involve an unreasonable application of, federal law as established by the Supreme Court in *Strickland v. Washington*. Petitioner is not entitled to relief on his claims of ineffective assistance of counsel.


VI.    <u>Conclusion</u>

The petition for habeas corpus relief will be **DENIED** and this action will be **DISMISSED**. Rule 4 of the Rules Governing Section 2254 Cases In The United States District Courts. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253(c);

Rule 22(b) of the Federal Rules of Appellate Procedure.  The court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous.  *See* Rule 24 of the Federal Rules of Appellate Procedure.  The court will further **DENY** petitioner leave to proceed *in forma pauperis* on appeal.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas W. Phillips
United States District Judge